IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JAMES LOGAN DIEZ | § | |
| v. | § | CIVIL ACTION NO. 6:05cv116 |
| DIRECTOR, TDCJ-CID | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Petitioner James Logan Diez, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of disciplinary action taken against him during his confinement in TDCJ-CID. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. §636(c).

Diez says that he was charged with the offense of threatening to inflict harm on an officer and possession of contraband, for which he was found guilty on August 10, 2004. The offense report alleged that he said "you're going to make me whip your ass" to Officer McDonald. He also had in his possession two pounds of sugar. As punishment, Diez received 45 days of cell and commissary restrictions, 15 days of solitary confinement, reduction in classification status from Line Class I to Line Class III, and the loss of 30 days of good time.

In his petition, Diez complains that he was arbitrarily denied the right to appeal, he was denied witnesses, there was no evidence to support the finding of possession of contraband, prison rules required that the alleged contraband be preserved but it was not, and he was not permitted to adduce evidence relating to Officer McDonald's character or credibility.

The Respondent has been ordered to answer and has done so. The Respondent has also furnished a copy of the disciplinary hearing in which Diez was found guilty. Diez filed a response to the answer.

<u>The Disciplinary Hearing Tape</u>

The audiotape of the disciplinary hearing opens with the hearing officer, Captain Jock, stating the purpose of the hearing and identifying Diez. Counsel substitute for Diez was present and announced ready. Diez stated that he understands the charges, that he received a copy of the charges, and that his counsel substitute advised him of his rights and discussed the charges against him.

Diez was then given the opportunity to make an opening statement. He admitted having a small packet of bleach, saying that he intended to wash his apron with it, but denied having any sugar. Diez also denied threatening the officer or making any threatening remarks. He asked that other inmates present be called as witnesses and stated that Officer McDonald had been "gunning" for him for several weeks, so he has been trying to avoid her. He began talking about another incident, but Captain Jock would not permit him to, saying that it was irrelevant.

Inmates Burton and Lacy were called as witnesses. Burton said that he did not hear Diez make any threatening remarks, and Lacy said that the package which Diez had was smaller than a two-pound bag of sugar would be. Lacy also stated that what Diez actually said was "let's see how the investigation turns out." Following the testimony of the witnesses, Diez stated that the first he heard of any threat was when he received the notice of the charge.

Officer McDonald testified that she wrote the case and that it was true and correct. She said that while she was searching the inmates, the package of sugar fell out of Diez's apron. He said that it was not his, and she asked him for his ID card. Diez initially said that she already knew his name and number, but finally gave her his ID card. She specifically said that Diez had directed the statement toward her and that she felt threatened. McDonald also said that she took the package to the sergeant and that it was in fact two pounds of sugar.

On cross-examination, Diez asked about the other inmates who were there, but McDonald explained that they had already been taken out of the area. She said that they were originally present, when she began the search, but that they were not there when the incident occurred. Diez asked that Officer Barber be called as a witness to testify as to whether or not the other inmates had been removed

from the scene, but Captain Jock denied this request because Barber was not present at the time of the incident and thus had no personal knowledge of it himself.

## The Answer and Response

In his answer, the Respondent says that Diez did not exhaust his administrative remedies because he did not file his grievances in a procedurally proper manner, and so Diez's claims are procedurally defaulted. The Respondent also asserts that the punishment imposed upon Diez is *de minimis*[1] and that Diez has not shown that he was denied his constitutionally guaranteed rights.

In his response to the answer, Diez points first to alleged misstatements by the Respondent about his underlying criminal record. He then says that the Respondent's answer mis-stated his claims by deleting one of them, that the Respondent incorrectly avers that Diez failed to argue that the administrative process was futile and ineffective when in fact he did so, that McDonald improperly destroyed evidence and that he was denied a witness who would have destroyed McDonald's credibility, and that the Respondent confuses custodial classification with time-earning classification. In addition, Diez argues that while he only lost 30 days of good time, his mandatory supervision release date was changed from September of 2006 to April of 2014, a difference of eight years, as a result of this case. He again insists that Officer Barber's testimony was relevant to McDonald's credibility.

## Legal Standards and Analysis

The Respondent argues that Diez failed to exhaust his administrative remedies and so all of his claims are unexhausted, and thus procedurally defaulted. Diez says that he tried to file two grievances,

---

[1] The Respondent argues that the loss of 30 days of good time credit is *de minimis*. This position has never been expressly taken by the Fifth Circuit, although that Court has seemingly left open the possibility that such a loss could be *de minimis*. *See* Richards v. Dretke, 394 F.3d 291, 294 n.5 (5th Cir. 2004); *compare* Madison v. Parker, 104 F.3d 765 (5th Cir. 1997) (loss of 30 days of good time could implicate protected liberty interest). The Northern District of Texas has concluded that for an inmate serving a 45-year sentence, the loss of 30 days of good conduct time is *de minimis* because it represents 0.18 percent of his total sentence. Teague v. Dretke, 384 F.Supp. 999, 1003 (N.D.Tex. 2005). This Court, however, has rejected the argument, noting that the Supreme Court did not discuss the possibility of a *de minimis* loss of good time credits in Sandin v. Conner, 115 S.Ct. 2293 (1995), and the only authority presented by the Respondent is the footnote in Richards. Foster v. Director, TDCJ-CID, cause no. 9:05cv15 (E.D.Tex 2005). As in Foster, this Court is unwilling to conclude at this time that the loss of 30 days of good time is *de minimis*.

but they were returned unprocessed because he had added a page for the statement of his claims and so it was returned for "excessive attachments."

In his first ground for relief, Diez says that he was denied a fair opportunity to file administrative grievances. He contends that his grievances were returned to him because of "excessive attachments," but he had attached only one sheet of paper to the grievance. He explains that his grounds for appealing the case would not fit on the form, so he had to attach a separate sheet, but the grievance was rejected because of this.

TDCJ-CID regulations provide that grievances that do not meet certain established screening criteria may be returned unprocessed. Among the screening criteria is "inappropriate/excessive attachments." Inmates are advised that their grievances must be stated on one form and in the space provided, and that only official documents such as I-60's, sick call requests, property papers, and other similar documents may be attached. *See* Offender Orientation Handbook, Nov. 2004 ed., p. 53 (available on-line at http://www.tdcj.state.tx.us/publications/cid/publications-cid-offender-orientation-handbook.htm). Because Diez did not comply with this rule, but attached an extra sheet of paper, his grievance was rejected.

Diez has failed to show that the rejection of his grievance on this basis should entitle him to federal habeas corpus relief. In the first place, he has not established that had his grievance been processed, his appeal would have been upheld. Furthermore, Diez has no constitutionally protected liberty interest in the grievance procedure. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also* Cole v. Abbott, slip op. no. 03-41499 (5th Cir., March 4, 2004) (unpublished) (because the prison grievance procedure does not affect the duration of an inmate's confinement, the inmate cannot establish that he has a state-created liberty interest in that procedure).

A number of other courts have similarly held that inmate grievance procedures are not constitutionally required, and so violations of such procedures do not deprive inmates of constitutionally protected rights. Spencer v. Moore, 638 F.Supp. 315, 316 (E.D. Mo. 1986), *citing* O'Bryan v. County of Saginaw, 437 F.Supp. 582 (E.D. Mich. 1977); *see also* Azeez v. DeRobertis, 568 F.Supp. 8 (N.D. Ill. 1982). In Mann v. Adams, 855 F.2d 639 (9th Cir.), *cert. denied* 109 S.Ct. 242

(1988), the Ninth Circuit Court of Appeals noted that inmates have no legitimate claim of entitlement to a grievance procedure, and thus no protected liberty interest exists. This position was also taken by the Eighth Circuit in Flick v. Alba, 932 F.2d 728 (8th Cir. 1991).

It is true that the Fifth Circuit has held that under certain circumstances, prisoners may have a liberty interest in prison grievance procedures. Gartrell v. Gaylor, 981 F.2d 254, 259 (5th Cir. 1993), *citing* Jackson v. Cain, 864 F.2d 1235, 1248-49 (5th Cir. 1989). However, Jackson speaks of a liberty interest in grievances in the context of a prisoner's right to be free from retaliation for using it, and Gartrell refers to a conspiracy to deprive an inmate of due process through improper review of a disciplinary proceeding in retaliation for writ-writing activities. Hence, these cases speak of a liberty interest in being free from retaliation for engaging in a protected activity, not a liberty interest in the grievance process *per se*. That situation does not exist in this case.

Instead, Diez argues that the grievance procedure itself is inadequate. However, it was Diez's own action in attaching an extra page which led to the non-processing of his grievance. He has failed to show that he is entitled to habeas corpus relief on this point even assuming that his claim is cognizable in a habeas proceeding. Diez's first ground for relief is without merit.

Consequently, the Respondent's contention that Diez's claims have been procedurally defaulted is correct. The Fifth Circuit has long held that inmates seeking relief from prison disciplinary cases must exhaust their available administrative remedies. Lerma v. Estelle, 585 F.2d 1297, 1299 (5th Cir. 1978); *see* 28 U.S.C. §2254(b) (requiring exhaustion of available state remedies). The Fifth Circuit has further held that if a petitioner fails to exhaust state remedies, but the court to which the petitioner would be required to meet the exhaustion requirement would now find the claims procedurally barred, there has been a procedural default for purposes of federal habeas corpus relief. Sones v. Hargett, 61 F.3d 410, 416 (5th Cir. 1995), *citing* Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

This case does not involve a state court, but rather the TDCJ-ID administrative grievance procedure, which is the procedure through which Diez must exhaust his available state remedies regarding the disciplinary conviction. Lerma, 585 F.2d at 1299. Because Diez did not exhaust his

administrative remedies in a procedurally proper manner, his claims are procedurally defaulted; however, in the interest of justice, the Court will address his claims on the merits.

In his second ground for relief, Diez complains that he was denied a witness, Officer Barber. He says that he wanted Barber to testify that he, Barber, had not removed Burton and Lacy from the area prior to the confrontation between Diez and McDonald. He says that McDonald testified that Burton and Lacy were not there and that this evidence was relevant to the issue of McDonald's credibility.

The Fifth Circuit has held that confrontation and cross-examination of witnesses is not constitutionally required, and that prison officials may limit the number of witnesses called without offering an explanation to the prisoner. Houser v. Dretke, 395 F.3d 560, 562 (5th Cir. 2004). In addition, the Supreme Court has held that inmates do not have a constitutional right to confront or cross-examine prison officials. Wolff v. McDonnell, 418 U.S. 539, 566 (1974). As a general rule, decisions concerning confrontation and cross-examination of witnesses are left to the sound discretion of prison officials. Wolff, 418 U.S. at 569; Houser, 395 F.3d at 562.

In this case, Diez has failed to show an abuse of discretion in the failure to call Officer Barber. As Captain Jock noted, Barber was not there when the incident occurred, and so he had no personal knowledge of the facts forming the basis of the incident. In addition, the Fifth Circuit has held that complaints of uncalled witnesses are not favored in habeas corpus review because allegations of what the witness would have testified to are largely speculative; when the only evidence of a missing witness' testimony is provided by the habeas petitioner, the courts view the claim with "great caution." Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir. 1986). A meritorious claim of uncalled witnesses requires that a habeas petitioner show that the testimony would have ben favorable to him and that the witness would have so testified during the proceeding. Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985); see Smith v. Dretke, civil action no. 7:02-CV-228-R (N.D.Tex., January 25, 2005) (unpublished) (available on WESTLAW at 2005 WL 170723) (applying uncalled-witness rules to habeas petition challenging a prison disciplinary case). Diez has not shown that Barber would have

testified favorably to him had he been summoned; he offers only the conclusory assertion that that is so. This is not sufficient.

Finally, even had Barber so testified, this testimony that he, Barber, had not removed the inmates would simply have been cumulative to the testimony of the inmates themselves that they were there. Diez has no constitutional right to offer irrelevant or cumulative testimony. *See* Capps v. Collins, 900 F.2d 58, 60 (5th Cir. 1990). His claim on this point is without merit.

Third, Diez says that there was no evidence to support the finding of possession of contraband, arguing that the contraband itself was not produced at the hearing, in violation of prison regulations. The Fifth Circuit has held that federal courts cannot retry every prison disciplinary dispute; rather, the court may act only where arbitrary or capricious action is shown. Stewart v. Thigpen, 730 F.2d 1002 (5th Cir. 1984). This means that prison disciplinary proceedings will be overturned only where there is no evidence whatsoever to support the result reached. Smith v. Rabelais, 659 F.2d 539 (5th Cir. 1981); *see also* Adams v. Gunnell, 729 F.2d 362, 370 (5th Cir. 1983) (hearing officer's decision will be upheld when it is supported by "some facts ... any evidence at all.") An officer's report, by itself, is sufficient to support a finding of guilt. Hudson v. Johnson, 242 F.3d 534, 536-37 (5th Cir. 2001). The district court, in reviewing this issue, need not conduct a *de novo* factual review. Smith, 659 F.2d at 545.

In this case, there was "some evidence" to support the finding of guilt in the form of Officer McDonald's report and testimony. There is no constitutional requirement that the items of contraband be produced at the disciplinary hearing.

To the extent that Diez contends that prison rules and regulations were violated, his claim fails to set out a basis for federal habeas corpus relief. The Fifth Circuit has held that a violation of prison rules alone is not sufficient to rise to the standards of a constitutional claim. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986). This comports with the longstanding rule that violations of state rules alone are not a basis for federal habeas corpus relief. *See* Manning v. Warden, Louisiana State Penitentiary, 786 F.2d 710, 711 (5th Cir. 1986). Diez's claim on this point is without merit.

In a related claim, Diez asserts that McDonald "destroyed evidence." He offers no factual basis for this other than by citing the fact that the contraband was not offered in the hearing. The Fifth Circuit has held that "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value." Ross v. Estelle, 694 F.2d 1008, 1011-12 and n.2 (5th Cir. 1983); see Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990). Diez has offered nothing but a bald assertion that McDonald destroyed evidence. His claim on this point is without merit.

Fourth, Diez says that he was denied the right to present evidence challenging McDonald's credibility. He says that before the hearing began, Captain Jock warned him that if he tried to bring up McDonald's character or credibility, he would be excluded from the hearing. Nothing in the record supports this assertion; the warning does not appear on the tape of the hearing, nor is it mentioned in any of the documents. Diez has offered nothing to substantiate his assertion that such a warning was given to him, and this bald allegation lacks probative evidentiary value. Ross, 694 F.2d at 1011-12. His claim on this point is without merit.

During the hearing, Diez did attempt to discuss another incident involving Officer McDonald, and Captain Jock did not permit him to do so, saying that this incident had nothing to do with the charges then being heard. Even assuming that the refusal to permit Diez to discuss this extraneous incident was related to the alleged warning, Diez has nonetheless failed to show that his due process rights were violated. This Court has found no federal case, in any jurisdiction, providing that prisoners have a right to offer character evidence regarding their accusers in disciplinary proceedings. Such a rule would permit prisoners to turn any and all disciplinary cases into a forum for airing whatever grievances they may have or contrive against the officers charging them with misconduct. No court has taken a step down this perilous pathway, and this Court will not be the first.

The Supreme Court has stated that notice of charges and an opportunity to be heard are the touchstones of due process in the context of prison disciplinary matters; thus, where a plaintiff receives notice of the offense charged and is able to prepare and present a defense, this normally satisfies the

8

requirements of due process. *See* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-66 (1974). In this case, Diez testified that he received notice of the charges and that he had a chance to discuss these charges with his counsel substitute. He was advised of his rights and was allowed to call two inmate witnesses and to ask questions of the charging officer, as well as to make a statement in his own behalf. Diez has failed to show that he was denied due process in the course of this proceeding and his application for the writ of habeas corpus is without merit.

Conclusion

I have carefully examined the grounds for habeas corpus relief presented by the Petitioner James Logan Diez, as well as the answer filed by the Respondent, the Petitioner's response to the answer, the state records, and all of the pleadings, documents, and records in the case. Upon such examination, I have concluded that the Petitioner James Diez has failed to show that he is entitled to the issuance of a writ of habeas corpus or to the relief sought in his application for such writ. Absent a showing that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, the relief sought cannot be granted. 28 U.S.C. §2241(c)(3). It is accordingly

ORDERED that the above-styled application for the writ of habeas corpus be and hereby is DISMISSED with prejudice. It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this **20** day of **October, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE